## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

United States of America,

        Plaintiff,

v.                                      Case No. 12-20003-08-JWL

Ronnie D. Morelan,

        Defendant.

### MEMORANDUM & ORDER

In April 2013, defendant Ronnie D. Morelan, pursuant to a Rule 11(c)(1)(C) plea agreement with the government, pled guilty to conspiracy to possess with intent to distribute and to distribute fifty grams or more of methamphetamine. In August 2013, the judge assigned to the case at the time sentenced defendant to 216 months, consistent with the parties' agreement. Defendant's sentence was subsequently reduced to 168 months pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 to the United States Sentencing Guidelines. He is presently incarcerated at Greenville FCI and his projected release date is March 12, 2024.

This matter is now before the court on defendant's motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (doc. 748). That statute allows a defendant to bring a motion for reduction of a term of imprisonment "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See id*. As will be explained, the court concludes that defendant has not exhausted his administrative remedies with respect to the underlying health conditions on which

he now relies in seeking release.  Accordingly, the court must dismiss his motion without prejudice to refiling upon a showing of exhaustion.  *See United States v. Springer*, 820 Fed. Appx. 788 (10th Cir. July 15, 2020) (suggesting in dicta that dismissal is required where movant fails to exhaust administrative remedies); *see also United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020) (holding that dismissal without prejudice is appropriate when compassionate-release movants fail to exhaust administrative remedies).

It is undisputed that defendant submitted a request for compassionate to release to the warden of his facility in October 2020 and that the warden failed to respond to that request.  In that request, which defendant has attached to his motion, defendant stated as follows:

> Due to the rising cases of Covid-19 at Greenville FCI and the "close contact quarantine" scare in my housing unit, I'm requesting compassionate release.  I feel that my health is at risk, possibly my life and the lack of everyday employee testing and group assignment of employees to specific areas will continue to keep me at risk.

The remainder of the request addresses the length of time defendant has left to serve, his clean disciplinary record, the courses he has completed while in custody, and his release plan.  In his motion for compassionate release, defendant argues that extraordinary and compelling reasons for immediate release from prison exist because his medical conditions (obesity, high blood pressure, high cholesterol and pre-diabetes) create an increased risk of serious harm or death from the ongoing coronavirus pandemic.  In response, the government asserts that defendant's motion must be dismissed for lack of jurisdiction because his request did not reference any medical conditions whatsoever, let alone the medical conditions now identified in his motion.  The court agrees.

The court recently addressed this very issue in *United States v. Burgoon*, 2020 WL 7396914, at *2-3 (D. Kan. Dec. 17, 2020).  In that case, the court began its discussion by first

distinguishing its decision in *United States v. Rucker*, 2020 WL 4365544, at *1 (D. Kan. July 30, 2020). In *Rucker*, the defendant included in his request to the warden that he suffered from "a set of medical conditions," including two particular conditions, that made him especially vulnerable to harm from COVID-19. *See id*. The defendant, then, clearly relied on his medical conditions in making his request and identified specific health concerns in that request. *See id*. Because the defendant had articulated certain medical conditions in his request, the court rejected the government's argument that defendant, in his motion to the court, could not rely on additional medical conditions not specifically identified in his request to the warden. *See id*.; *accord United States v. Jeffers*, 2020 WL 43100842, at *5 (N.D. Iowa June 11, 2020) (rejecting failure-to-exhaust argument where defendant mentioned in his request that he required "chronic care" in light of high blood pressure and anxiety and relied on diabetes for the first time in his motion; BOP on notice that defendant was seeking release in light of his health).

By contrast, in *Burgoon*, the defendant did not mention any medical conditions or underlying health issues in her request. *Burgoon*, 2020 WL 7396914, at *1. Presented with those facts, the court recognized that other courts faced with similar facts have come to different conclusions on the exhaustion question. *Compare United States v. Ethridge*, 2020 WL 5531518, at *2 (E.D. Mich. Sept. 15, 2020) (rejecting failure-to-exhaust argument despite the fact that defendant did not identify any medical condition as a basis for release in request to warden and only relied on general COVID-19 concerns; defendant could rely on obesity in motion to the court because he identified the COVID-19 pandemic as a basis for the request and it remained the basis of his motion) *and United States v. Haynes*, 2020 WL 4696601, at *2 (E.D. Mich. Aug. 13, 2020) (rejecting failure-to-exhaust argument where defendant did not specify COVID-19 or any medical

condition in his request; court could consider obesity and COVID-19 concerns because "it can be presumed that the BOP was well-aware of at least Defendant's obesity and high blood pressure when his request was denied") *with United States v. Alderson*, 2020 WL 4696599, at *2 (E.D. Mich. Aug. 13, 2020) (dismissing motion for lack of jurisdiction where defendant only referenced COVID-19 pandemic generally in request and cited no medical condition; to hold otherwise would "undermine the statutory scheme of administrative exhaustion that Congress purposefully designed") *and United States v. McNair*, 2020 WL 5036201, at * (D.N.J. Aug. 26, 2020) (defendant did not exhaust administrative remedies where request mentioned good behavior and rehabilitation but no medical condition and motion to court was based on medical conditions; BOP regulations required inmate to identify grounds for release in request).

Nonetheless, the court ultimately sided with those courts who have held that when a defendant's § 3582(c)(1)(A) request to the warden contains no reference to any medical condition whatsoever, that defendant has not exhausted administrative remedies with respect to medical conditions that form the basis for a motion for compassionate release filed with the court.  As the court explained in *Burgoon*:

> BOP regulations require that requests for compassionate release be made in writing and contain, at a minimum, "[t]he extraordinary or compelling circumstances that the inmate believe warrant consideration." *McNair*, 2020 WL 5036201, at *3 (quoting C.F.R. § 571.61(a)(1)).  In other words, the regulations require the inmate to identify the compelling reasons justifying release.  And where agency regulations require issue exhaustion, "courts reviewing agency action regularly ensure against the bypassing of that requirement by refusing to consider unexhausted issues." *Id*. (quoting *Sims v. Apfel*, 530 U.S. 103, 108 (2000)).  It is also clear from the language of the First Step Act that Congress intended the BOP to be able to consider requests for compassionate release in the first instance. *See* § 3582(c)(1)(A) (providing that "the court . . ., upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal . . . may reduce the term of imprisonment).

The court does not mean to suggest that the exhaustion requirement should be applied "hyper-technically" and it agrees with those courts that have recognized that a request to the warden need not be identical in detail or specificity to the motion made in court. *See United States v. Knight*, 2020 WL 4059886, at *2 (M.D.N.C. July 20, 2020). Indeed, this court's *Rucker* decision makes that plain. But there "must be a reasonable degree of overlap which gives the BOP a fair opportunity to consider whether to make the motion on the defendant's behalf." *See id.* Here, there is simply no overlap at all. Defendant did not identify any medical conditions in her request or suggest in any way that she was particularly at risk of harm or more susceptible to a severe case of COVID-19. Thus, the BOP did not have an opportunity to consider defendant's belief that she "should be released in light of COVID-19 vis-à-vis [her] medical conditions." *United States v. Matulich,* 2020 WL 3260068, at *3 (D. Nev. July 2, 2020). For these reasons, the court concludes that a defendant who wholly fails to mention any existing medical condition in a request to the warden cannot rely on a medical condition as a grounds for release before the court. *See United States v. Douglas*, 2020 WL 5816244, at *2 (D.D.C. Sept. 30, 2020) (defendant who did not identify any medical conditions in request to warden could not rely on hypertension as grounds for release in motion to court).

2020 WL 7396914, at *2-3.

The court's decision in *Burgoon* requires the same result here. As in *Burgoon*, defendant in this case did not identify any particular medical condition or specific health risk in his request to the warden. He relied instead on general concerns about the pandemic and the facility's alleged inability to adequately address the spread of the virus. In his reply, defendant urges that he referenced his health issues in his request, but he clearly did not. While he expressed a concern that his health was at risk, that risk was not tied to any particular condition; it was based solely on the rising number of cases in his facility. Defendant also argues in his reply that his failure to identify his medical issues is not relevant because the BOP is aware of his health conditions, including his obesity. But there is no evidence before the court that the BOP knew that defendant's request was based on a belief or assertion that he was particularly at risk of harm or more susceptible to a severe case of COVID-19 or that the BOP reviewed his request through that lens.

*Compare United States v. Clutts*, 2020 WL 6531915, at *4 (N.D. Iowa Nov. 5, 2020) (inmate properly exhausted administrative remedies despite failing to reference hypertension where BOP's response to request expressly indicated that it had reviewed inmate's medical records in connection with the request).  As in *Burgoon*, the court is unwilling to simply presume that the BOP reviewed the request with knowledge of defendant's medical conditions. *See Burgoon*, 2020 WL 7396914, at *2 (impliedly disagreeing with district court opinion finding that court could consider merits of motion where inmate had not identified health conditions as a basis for release because "it can be presumed that the BOP was well-aware of at least Defendant's obesity and high blood pressure when his request was denied").

In summary, the record in his case falls squarely within the rule articulated by the court in Burgoon.  Accordingly, the court must dismiss the motion for lack of jurisdiction.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (doc. 748) is dismissed without prejudice for lack of jurisdiction.

**IT IS SO ORDERED.**

Dated this 3rd day of February, 2021, at Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge

6